No. 23-1657

# United States Court of Appeals
# For the First Circuit

_____

NORTHWESTERN SELECTA, INC.,

Plaintiff - Appellee,

v.

RAMÓN GONZÁLEZ-BEIRÓ, Secretary of the Puerto Rico Department of Agriculture;
ALEX MUÑIZ-LASALLE, Deputy Secretary of the Puerto Rico Department of Agriculture,

Defendants -  Appellants.

_____

On Appeal from a Judgment of the United States District Court for the District of Puerto Rico in
Case No. 22-1092, Chief Judge Raúl Arias-Marxuach

---

## BRIEF OF APPELLEE NORTHWESTERN SELECTA, INC.

---

NÉSTOR M. MÉNDEZ GÓMEZ
MARÍA D. BERTÓLEZ ELVIRA
MARÍA ELENA MARTÍNEZ CASADO
PIETRANTONI MÉNDEZ & ÁLVAREZ LLC
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 274-1212 • Facsimile: (787) 274-1470

_Attorneys for Plaintiff-Appellee_

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellee Northwestern Selecta, Inc. certifies that it is a private, non-governmental party with no parent corporation(s) and that no publicly held company owns any interest in it.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF AUTHORITIES ...................................................................iv

REASONS WHY ORAL ARGUMENT
    NEED NOT BE HEARD ............................................................. vii

STATEMENT OF THE ISSUE...............................................................1

STATEMENT OF THE CASE...............................................................1

    A.    Northwestern Selecta, Inc.'s importation operations of
    poultry products in Puerto Rico ...........................................1

    B.    Article XII(B) of the PRDA Market Regulation No. 8
    and its enforcement .............................................................3

    C.    This Litigation ..................................................................4

SUMMARY OF THE ARGUMENT ....................................................8

STANDARD OF REVIEW ..................................................................10

ARGUMENT ......................................................................................10

I. The District Court Correctly Found that the PPIA
    Preempts Article XII(B) ..................................................................10

    A.    Preemption under the PPIA and related federal regulations ..............11

    B.    The PPIA expressly preempts Article XII(B) because it imposes
    requirements beyond those imposed by federal law and regulations
    with respect to NWS's operations......................................................15

    C.    The PRDA cannot exercise concurrent state jurisdiction .................22

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................31

CERTIFICATE OF SERVICE ...............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altria Grp., Inc. v. Good*,
    555 U.S. 70 (2008) ........................................................................................11

*Antilles Cement Corp. v. Fortuño*,
    670 F.3d 310 (1st Cir. 2012)..........................................................................11

*Asociación de Educación Privada de P.R., Inc. v. García-Padilla*,
    490 F.3d 1 (1st Cir. 2007)........................................................................10, 17

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)................................................................................. 26-27

*Chicago-Midwest Meat Association v. Evanston*,
    598 F.3d 278 (7th Cir. 1978), ............................................................21, 22, 25

*Coventry Health Care of Missouri, Inc. v. Nevils*,
    581 U.S. 87 (2017)..........................................................................................20

*Eldridge v. Gordon Bros. Group, LLC*,
    863 F.3d 66 (1st Cir. 2017)........................................................................18, 24

*Esso Standard Oil Co. v. López-Freytes*,
    522 F.3d 136 (1st Cir. 2008)..........................................................................10

*Grocery Mfrs. of Am. Inc. v. Gerace*,
    755 F.2d 993 (2d Cir. 1985) ..........................................................................15

*Hoolahan v. IBS Advanced Alloys Corp.*,
    947 F.3d 101 (1st Cir. 2020)..........................................................................19

*In re O'Donnell*,
    728 F.3d 41 (1st Cir. 2013)............................................................................17

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977) .......................................................................................15

*Kelly v. Riverside Partners, LLC,*
    964 F.3d 107 (1st Cir. 2020)..........................................................................18, 24

*Louisiana Pub. Serv. Comm'n v. F.C.C.,*
    476 U.S. 355 (1986)..........................................................................................11

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992)..........................................................................................20

*Nat'l Broiler Council v. Voss,*
    44 F.3d 740 (9th Cir. 1994) ........................................................ 16, 19-20, 26

*National Meat Association v. Harris,*
    565 U.S. 452 (2012)................................................................................15, 20, 21

*Nw. Selecta, Inc. v. Muñoz,*
    106 F. Supp. 2d 223 (D.P.R. 2000) ................................................................12

*Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of P.R.,*
    437 F. Supp. 3d 119 (D.P.R. 2020) ................................................................11

*United States v. Slade,*
    980 F.2d 27 (1st Cir. 1992)..............................................................................18


**Consitutional Provisions and Statutes**

U.S. Const. Art. VI, cl. 2 ......................................................................................11

21 U.S.C. § 452...............................................................................................12, 20

21 U.S.C. § 453(p) ...................................................................................................2

21 U.S.C. § 455......................................................................................................12

21 U.S.C. § 456......................................................................................................12

21 U.S.C. § 457...................................................................................................12,19

21 U.S.C. § 458 (a)(2)............................................................................................13

21 U.S.C. § 463......................................................................................................19

21 U.S.C. § 467e ...................................................................passim

21 U.S.C. §§ 601 *et seq* .................................................15, 21


**U.S. Regulations**

9 C.F.R. § 300.2 .....................................................................13

9 C.F.R. § 318.2 ...............................................................14, 19

9 C.F.R. § 381.125(a) ...............................................................5

9 C.F.R. § 381.145 ........................................................13, 14, 19

9 C.F.R. § 381.199 ..................................................................14

9 C.F.R. § 381.4 ..................................................................7, 13

9 C.F.R. § 381.6 .....................................................................13


**Other Authorities**

PRDA Regulation No. 8 Article XII(A) .....................................27

PRDA Regulation No. 8 Article XII(B) ...............................passim

PRDA Regulation No. 8 Article XIV(A)(6) ....................4, 5, 6, 8

PRDA Regulation No. 8 Article XVII .........................................3

PRDA Regulation No. 8 Article XIX ...........................................3

**REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD**

Pursuant to Fed. R. App. P. 34, Plaintiff-Appellee Northwestern Selecta, Inc. submits that oral argument is unnecessary for this case because the facts and legal arguments are adequately presented in the briefs and in the record. Moreover, this appeal raises no novel legal questions and involves purely legal issues. The district court's decision was based on the pleadings and filings per the parties' request and agreement that the merits of the case turn on legal issues. See Appendix at 138. It does not appear that oral argument would significantly aid the Court' decision of the instant appeal. Accordingly, pursuant to Fed. R. App. P. 34(a)(2) and 34(f), Plaintiff-Appellee requests that the case be submitted for decision on the briefs.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that Article XII(B) of the Puerto Rico Department of Agriculture Market Regulation No. 8, requiring that a Puerto Rico Department of Agriculture inspector be physically present at the moment when the freight container is first opened and unloaded at the Northwestern Selecta, Inc. facilities, is preempted by Section 467e of the Poultry Products Inspection Act, 21 U.S.C. §§ 451-469.

## STATEMENT OF THE CASE

### A.     Northwestern Selecta, Inc.'s importation operations of poultry products in Puerto Rico

Northwestern Selecta, Inc. ("NWS") imports fresh and frozen poultry products domestically from within the United States, as well as frozen poultry products from foreign countries. Appendix ("App.") 140.[1] Most of NWS's freight containers that carry poultry products also contain other food products. App. 140. NWS's facilities are located near the Port of San Juan at 769 Calle C, Mario Juliá Industrial Park, San Juan, Puerto Rico 00920 (the "NWS Facilities"). App. 140. These facilities are certified by the U.S. Department of Agriculture ("USDA") as an

---

[1] Only domestic imports are at issue in this case.

"official establishment" under the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-469.[2] App. 140, 241-47.

NWS's domestically imported poultry products arrive by sea cargo shipping containers at the Port of San Juan. Addendum to Appellant's Brief ("Add.") 4. Upon arrival at the Port, each NWS freight container is offloaded by the Port's dock workers from the ship to the Port docks to await clearance by the necessary government authorities. App. 164. The Puerto Rico Department of Agriculture ("PRDA") receives copies of bills of lading from NWS informing the contents of the freight containers. App. 140. Notably, all domestic poultry products have already passed inspection on the mainland by the U.S. Department of Agriculture ("USDA") and bear an official mark to that effect. Id. Once NWS is notified of clearance, a NWS contractor transports the freight containers from the docks directly to the NWS Facilities. App. 164. There, they are opened and unloaded by NWS personnel. Id. NWS receives and unloads a weekly average of fifty freight containers. Id. NWS eventually distributes the products to wholesale and retail stores. Id. With respect to fresh poultry products, they must be distributed promptly due to their limited shelf life and because NWS oftentimes pre-sells them, reasons why timely delivery is essential to meet consumer demand. Id.

---

[2] An "official establishment" is "any establishment as determined by the [USDA] Secretary at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this chapter." 21 U.S.C. § 453(p).

**B.    Article XII(B) of the PRDA Market Regulation No. 8 and its Enforcement**

On June 24, 2016, the PRDA promulgated Market Regulation No. 8, registered with the Puerto Rico Department of State as Regulation No. 8764 and titled *To Govern the Quality and Marketing of Poultry Meat in the Commonwealth of Puerto Rico* ("PRDA Regulation 8"). App. 204-240. PRDA Regulation 8's stated purpose is to regulate "illegal practices" and "protect the integrity in the quality and health of the local and imported products that are marketed in Puerto Rico." App. 207. Article XII of PRDA Regulation 8 provides for PRDA inspection of imported poultry products for marketing in Puerto Rico. App. 230. **As relevant to this appeal, Section B of Article XII requires that "[a]n official of the [PRDA] be present at the time of opening and unloading the container."** Id.

Since the promulgation of PRDA Regulation 8 in 2016, the PRDA had not enforced or sought to enforce Article XII(B) against NWS, until June 2021.[3] App. 141. On June 30, 2021, the PRDA Deputy Secretary, through PRDA inspectors, issued several Orders of Detention impounding over 200,000 pounds of fresh poultry products imported by NWS on grounds that a PRDA inspector was not physically

---

[3] The PRDA Secretary is empowered to impound or detain any lot of imported poultry products that fails to comply with any requirement in PRDA Regulation 8 pursuant to Article XVII. App. 237. Furthermore, Article XIX authorizes the imposition of fines up to $10,000 per infraction and the revocation of the importer's license for subsequent infractions. App. 238.

present at the NWS Facilities when the freight container containing the products was opened and unloaded, purportedly in violation of Article XII(B). App. 141. The PRDA also issued Notices of Fines. App. 166. Subsequently, it issued additional Notices of Violation and Orders to Show Cause against NWS with respect to other freight containers, all asserting substantially the same grounds as the June 30, 2021 Order of Detention. App. 141, 258-69, 296-414, 478, 498-518, 553, 559. The PRDA issued such notices and orders despite distributing on June 21, 2022, Administrative Order 2022-14, which, acknowledging the lack of sufficient inspectors necessary to enforce PRDA Regulation 8, particularly Article XII(B), suspended the inspection of imported products and, instead, ordered that only random, limited inspections be conducted. App. 478-79, 483-86.

### C.   This Litigation

On February 24, 2022, NWS filed a Verified Complaint against now Defendants-Appellants the Secretary of the PRDA, Ramón González-Beiró, and its Deputy Secretary, Alex Muñiz-Lasalle (collectively, the "PRDA"), seeking injunctive and declaratory relief from PRDA Regulation 8 Articles XIV(A)(6), which concerns labeling requirements for packaged poultry products, and Article XII(B). App. 1-110. NWS asserted that Articles XIV(A)(6) and XII(B) are preempted by the PPIA for imposing requirements "in addition to, or different than" those established in the PPIA and the regulations promulgated thereunder by the

Food Safety and Inspection Service ("FSIS"). App. 7. NWS claimed that Article XIV(A)(6) prohibited imported poultry products from being labeled as "Keep Refrigerated or Frozen" despite FSIS regulation at 9 C.F.R. § 381.125(a) allowing such labeling. App. 7-8. With respect to Article XII(B), NWS asserted that the PRDA imposed the additional requirement that a PRDA inspector by physically present when a freight container at the NWS Facilities is opened for the first time and unloaded, when neither the PPIA nor FSIS regulations require the presence of an inspector when opening or unloading a freight container. App. 10-16.

The parties filed joint factual and document stipulations and requested that the case be decided on the briefs without an evidentiary hearing because its merits turned on purely legal issues. App. 137-42. NWS filed a Memorandum in Support of Request for Injunction and the PRDA filed a brief in opposition. App. 161-473.

On October 24, 2022, NWS filed an Informative Motion and in Further Support of Request for Permanent Injunction informing of the PRDA's continued enforcement of Article XII(B) and attempts to impose punitive fines. App. 476-518. Similarly, on December 19, 2022, it filed a motion requesting emergency relief based on the PRDA's impounding at the NWS Facilities of over 49,000 pounds of domestically imported fresh poultry on grounds that the packaging, already FSIS-approved, violated Article XIV(A)(6). App. 519-25.

- 5 -

On December 29, 2022, the district court granted a preliminary injunction barring the enforcement of Article XIV(A)(6), finding that said article's prohibition of labeling poultry products with "Keep refrigerated or frozen" was directly at odds with, and thus preempted by, the PPIA and the regulations issued thereunder. App. 529-46. This decision is not at issue on appeal.

On January 31, 2023, NWS filed a motion seeking to extend the December 29, 2022 preliminary injunction to PRDA's enforcement of Article XII(B). App. 547-57. NWS averred that the implementation of Article XII(B) disrupted its orderly and timely operations, causing delays in order fulfillment, a decrease in the shelf-life of the products and even spoilage, which in turn affected client relationships and contracts. App. 551.

On June 28, 2023, the district court issued its Opinion and Order granting NWS's request for a permanent injunction with respect to both Articles XIV(A)(6) and XII(B). Add. 1-24. In doing so, the district court held that both articles fell within the scope of PPIA's express preemption clause. Add. 18. With respect to Article XIV(A)(6), after observing that FSIS regulations identified the information the labels must include and what information is impermissible on a label, Add. 14, the district court referred to its previous Opinion and Order granting a preliminary injunction, Add. 18-19.

Regarding Article XII(B), the district court first focused on the section of PPIA's preemption clause prohibiting states and territories from imposing additional or distinct requirements with regards to "premises, facilities and operations of any official establishment." Add. 19 (quoting 21 U.S.C. § 467e). The district court found that Article XII(B) "necessarily relates to NWS' operations, of which inspection is an integral part," because compliance with Article XII(B) "affect[ed] distribution operations by causing delays and decreasing the shelf-life of imports, particularly when the PRDA inspector is untimely or fails to arrive completely." Add. 19. Having observed that FSIS regulations already provide for the manner and method of inspection of poultry products, App. 15 (citing 9 C.F.R. § 381.4), the district court reasoned that, absent applicability of the exception outlined in the PPIA preemption clause, Article XII(B) fell within its scope. Add. 17, 19-20.

The district court next focused on this exception, which provides that a state or territory may, "consistent with the requirements under this chapter exercise concurrent jurisdiction . . . over articles required to be inspected under this chapter" and that "are outside of [an official] establishment" to prevent them from being "adulterated or misbranded." Add. 20 (quoting 21 U.S.C. § 467e). Based on the plain language of that section, the district court concluded that the PRDA could exercise concurrent jurisdiction with regards to inspection of products only if they were outside of an official establishment. Add. 20. Finding that NWS's imported poultry

products are inside an official establishment when a PRDA inspector inspects them, the district court determined that the exception for concurrent jurisdiction to impose inspection requirements with regards to those products does not apply. Add. 20-21. Accordingly, the district court correctly held and declared that Article XII(B) is preempted. Add. 21, 23.

Finding that all four relevant factors for issuance of a permanent injunction favored NWS, the district court granted permanent injunctive relief barring the PRDA from enforcing or giving effect to Articles XII(B) and XIV(A)(6) against NWS and from detaining imported poultry products or levying sanctions against NWS for not complying with those articles. Add. 21-24.

The PRDA timely filed a Notice of Appeal. Add. 27. On appeal, the PRDA challenges the district court's decision solely as to Article XII(B) (requiring the presence of a PRDA inspector at the time of opening and unloading the freight container). Appellant's Blue Brief ("Bl. Br.") 2.

## SUMMARY OF THE ARGUMENT

This appeal requires the Court to consider whether the PPIA, a federal statute, preempts the PRDA-imposed requirement in Article XII(B) of PRDA Regulation 8, which requires that a PRDA inspector be present when a freight container containing poultry products is opened and unloaded at the NWS Facilities. The Court should reject the PRDA's challenge to the district court's sound determination that Article

XII(B) of PRDA Regulation 8 is preempted by the PPIA, 21 U.S.C. § 467e. The PRDA's arguments fail on the merits.

As the district court correctly found, because the PPIA prohibits States or Territories from imposing requirements with respect to premises, facilities and operations of any "official establishment" that are in addition to, or different than those made under the PPIA and the FSIS regulations promulgated thereunder, and none of these federal regulations require the presence of an inspector at the time of opening and unloading a freight container with products to be inspected, the PRDA's regulation was "in addition to" federal requirements. Moreover, because Article XII(B) relates and involves the inspection operations of NWS, and by extension its distribution operations, Article XII(B) falls within the PPIA's express preemption. The PRDA's arguments fail to acknowledge well-established case law that the PPIA preemption clause language is interpreted broadly and unavailingly attempts to cabin the PPIA's preemptive effect. Plainly, Article XII(B) is expressly preempted by the PPIA.

Furthermore, no reading of PPIA's preemption clause supports the PRDA's exercise of concurrent jurisdiction with respect to the application and enforcement of Article XII(B). The PRDA's sole argument to challenge the district court's correct conclusion that concurrent jurisdiction with regards to inspection of the poultry products cannot be exercised because NWS's poultry products are in an official

establishment, first raised here, is that the freight containers are not inside NWS's facilities. This argument does not hold water. The parties' stipulations, PRDA's own detention orders and notices of violation, and the record in this case show that the poultry products at issue are inside an official establishment. In any event, the fact that Article XII(B) is not consistent with federal regulations and that it does not further inspection for the purposes of identifying misbranded or adulterated products also strips the PRDA's concurrent jurisdiction with respect to Article XII(B).

For these reasons, and the arguments that follow, this Court should affirm the district court's order and judgment declaring Article XII(B) of PRDA Regulation 8 preempted and issuing a permanent injunction as to NWS.

## STANDARD OF REVIEW

This Court reviews the scope of a district court's grant of a permanent injunction for abuse of discretion, while questions of law are reviewed <u>de novo</u>, and findings of fact for clear error. <u>Esso Standard Oil Co. v. López-Freytes</u>, 522 F.3d 136, 142 (1st Cir. 2008); <u>Asociación de Educación Privada de P.R., Inc. v. García-Padilla</u>, 490 F.3d 1, 8 (1st Cir. 2007).

## ARGUMENT

## I.  The District Court Correctly Found that the PPIA Preempts Article XII(B).

Article XII(B) of PRDA Regulation 8 imposes a Puerto Rico-specific requirement that a PRDA inspector be physically present when a freight container

containing poultry products is opened and unloaded, which in the case of NWS occurs at the NWS Facilities. App. 230, 141. This is precisely the type of regulation that Congress sought to avoid when it passed the PPIA and included an express preemption clause. The district court correctly concluded that, under the plain language of PPIA's preemption clause, Article XII(B) is expressly preempted. Add. 17-21.

### A.     Preemption under the PPIA and related federal regulations

Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, any Puerto Rico law that interferes with or is contrary to federal law is void. Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of P.R., 437 F. Supp. 3d 119, 127 (D.P.R. 2020) (citing Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012)). By virtue of this clause, "the Constitution provides Congress with the power to pre-empt state law." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 357 (1986). Congress may indicate preemptive intent through a statute's express language—as in this case—or Congress can imply a statute's preemptive intent through its structure and purpose. Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008).

Congress passed the PPIA, 21 U.S.C. § 451 *et seq.*, to establish a comprehensive, uniform regulatory framework "assuring that poultry products distributed to [consumers] are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. The congressionally declared purpose of

the PPIA is to provide for the inspection of poultry and poultry products and to regulate their processing and distribution to prevent the movement or sale in interstate or foreign commerce of such products which are adulterated or misbranded. Nw. Selecta, Inc. v. Muñoz, 106 F. Supp. 2d 223, 228 (D.P.R. 2000) (citing 21 U.S.C. § 452). To that end, the PPIA provides for the inspection of poultry products, *ante* and *post* mortem, in "official establishments," 21 U.S.C. § 455, provides for the operation of each official establishment slaughtering poultry or processing poultry products for commerce in accordance with sanitary practices required by regulations promulgated by the Secretary of the USDA, id. § 456, and establishes requirements for labeling and marking of all products inspected at any "official establishment" under the authority of the PPIA, id. § 457. See also Muñoz, 106 F. Supp. 2d at 228.

The PPIA's express preemption provision provides as follows:

> **Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory** or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment. Marking, labeling, packaging, or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter, **but any State**

**or Territory** or the District of Columbia **may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded <u>and</u> are outside of such an establishment**, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.

21 U.S.C. § 467e (emphasis added).

The USDA Secretary delegates to the FSIS the responsibility for exercising the Secretary's functions under the PPIA, including implementing the provisions of the PPIA. 9 C.F.R. § 300.2. FSIS has promulgated extensive regulations as to all events and phases of the federal inspection of poultry products. The FSIS has established that "inspection of poultry products shall be rendered pursuant to the regulations and under such conditions and in accordance with such methods as may be prescribed or approved by the Administrator [of FSIS]." 9 C.F.R. § 381.4. Under the PPIA as well as FSIS regulations, inspection is required at any establishment where poultry is slaughtered for transportation or sale in commerce, or in which any poultry products are wholly or in part processed for transportation or sale in commerce. <u>See</u> 21 U.S.C. § 458(a)(2); 9 C.F.R. §§ 381.6, 381.145. FSIS employees may reinspect poultry products to ascertain that the products are not adulterated or misbranded at the time they enter or leave "official establishments."

- 13 -

9 C.F.R. §§ 318.2, 381.145. However, and critically, the presence of an inspector at the time when a freight container is opened and unloaded is **not** required anywhere in the PPIA nor in FSIS's extensive regulations on inspection or reinspection. Indeed, USDA and FSIS do **not** require that an inspector be present when NWS opens and unloads freight containers containing poultry products imported from within the U.S at the NWS facilities. App. 141. Actually, only USDA-inspected imported poultry products from outside the U.S. and Puerto Rico are reinspected by FSIS once they enter an official establishment within the U.S. and Puerto Rico as per specific regulations to that effect which do not require that the container be opened and unloaded in the presence of the FSIS inspector. See 9 C.F.R. § 381.199.

As explained below, federal law expressly preempts Article XII(B) because it seeks to impose requirements with respect to NWS's operations that are "in addition to, or different than" those established by the PPIA and FSIS regulations. Moreover, the PRDA cannot escape preemption by invoking the concurrent jurisdiction provision of the preemption clause because Article XII(B)'s requirement is not consistent with federal regulations, the articles subject to inspection are not outside an official establishment, and the requirement does not further the purpose of preventing the distribution of adulterated or misbranded articles.

**B.     The PPIA expressly preempts Article XII(B) because it imposes requirements beyond those imposed by federal law and regulations with respect to NWS' operations.**

Under § 467e, Article XII(B) is expressly preempted because it falls within one of the matters—operations of an official establishment—with respect to which state requirements in addition to, or different than those under the PPIA and FSIS regulations are prohibited. It is undisputed that NWS is an "official establishment" for purposes of the PPIA, as stipulated by the parties. App. 140; Bl. Br. 2.

Congress made clear that it intended to preempt state-law requirements "with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under [the PPIA]." 21 U.S.C. § 467e. The Supreme Court has interpreted the similarly worded preemption clause of the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601 et seq.,[4] to "sweep[] widely," "prevent[ing] a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act." Nat'l Meat Ass'n v. Harris, 565 U.S. 452, 459-60 (2012); see also Jones v. Rath Packing Co., 430 U.S. 519, 540 (1977) (finding Congress intended the FMIA's preemption clause to be given "a broad meaning"). Indeed, the Ninth Circuit has held that, under

---

[4] The preemption clauses of the PPIA and FMIA as "substantially identical." Grocery Mfrs. of Am. Inc. v. Gerace, 755 F.2d 993, 997 (2d Cir. 1985).

the PPIA, state requirements must be "identical" to those under federal law. Nat'l Broiler Council v. Voss, 44 F.3d 740, 745 (9th Cir. 1994) (per curiam).

Here, while neither the PPIA nor FSIS regulations require the presence of an inspector at the time when a freight container is opened and unloaded (nor does USDA or FSIS make this a requirement for NWS when it opens and unloads freight containers at the NWS Facilities, App. 141), Article XII(B) of PRDA Regulation 8, on the other hand, requires that a PRDA inspector be physically present when freight containers of imported poultry products (already USDA approved) are opened for the first time and are unloaded. App. 230. Therefore, plainly, Article XII(B) sets forth a requirement that is "in addition to" those under federal law, and that part of the preemption clause is satisfied.

Moreover, in the case of NWS, despite the PRDA's argument to the contrary (see Bl. Br. 15), the opening and unloading of freight containers occurs at the NWS Facilities. App. 140-41, 258-69, 296-414, 478, 498-518, 553, 559. This can be gleaned from the parties' stipulations (App. 141 ¶ 7 (stipulating that "the shipping container containing the products was opened and unloaded at the NWS facilities"); ¶ 8 (noting that shipping containers were "opened and unloaded at the NWS facilities"); see also ¶¶ 9, 10, 12), and PRDA's Orders of Detention and Notification of Violations and Order to Show Cause, which indicate that the freight containers and poultry products were located at NWS's facilities (App. 258-69, 296-414, 478,

498-518). Undoubtedly, then, Article XII(B) purports to regulate NWS's inspection procedures, as to which FSIS already has regulations in place. As the district court correctly found, the regulation of NWS's inspection procedures is operational in nature. Add. 19. Inspection of the freight containers and imported products is an integral part of NWS's operations. Add. 19.[5] In words used by the PRDA in its brief, NWS's inspection procedures involve "the performance of a practical work" and the application of "processes." See Bl. Br. 14 (citing the dictionary definition of "operations"). Moreover, meeting PRDA's requirement necessarily implicates the operations of NWS, affecting the distribution of products to clients and the products' shelf-life when the PRDA inspector is delayed or absent completely, and especially considering that most freight containers with poultry products also contain other food products. App. 140, 551; Add. 19. Therefore, Article XII(B) imposes a requirement **with respect to operations** of an official establishment. See 21 U.S.C. § 467e. And it was already established that such requirement is "in addition to" the federal requirements. Accordingly, Article XII(B) fits squarely into the PPIA preemption clause.

_____

[5] These findings of fact are only reviewable for clear error. Asociación de Educación Privada de P.R., Inc., 490 F.3d at 8. This is an exacting standard the PRDA cannot meet as there is no "strong, unyielding belief, based on the whole of the record, that the judge made a mistake." In re O'Donnell, 728 F.3d 41, 45 (1st Cir. 2013). Nor does the PRDA point to anything along those lines.

The PRDA attempts to avoid the preemptive effect by arguing that the district court's interpretation of the preemption clause is too broad, and that Article XII(B) is outside of Congress' intended preemptive framework. Bl. Br. 10, 13. For the first time on appeal, the PRDA attempts to delve into an analysis of the ordinary meaning of the words "premises, facilities and operations," Bl. Br. 13-14, the meaning of those words in the context of the PPIA, FSIS regulations, and other related regulations, Bl. Br. 14-19, and the congressional intent, Bl. Br. 19-21. Below, the PRDA's argument was limited to stating that Article XII(B) does not regulate anything related to NWS's premises, facilities, equipment, or operations that is different or additional to the PPIA, but it did not argue or develop the previously mentioned subtopics. App. 425-26. This should be enough for this Court to reject the PRDA's arguments. See Eldridge v. Gordon Bros. Group, LLC, 863 F.3d 66, 84 (1st Cir. 2017) ("[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court." (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992))); see also Kelly v. Riverside Partners, LLC, 964 F.3d 107, 114, 116 (1st Cir. 2020) (finding that argument not presented to district court cannot be raised for the first time on appeal). At best for the PRDA, consideration of its arguments not developed below would engender plain error review, a stringent standard that it cannot meet, as it fails to point to any clear or obvious error committed by the district court (or provide support

for it). See Hoolahan v. IBS Advanced Alloys Corp., 947 F.3d 101, 114 (1st Cir. 2020).

In any event, the PRDA's arguments are unavailing. It erroneously tries to cabin the meaning of "requirements . . . with respect to . . . operations" for purposes of the PPIA preemption clause to those solely relating to poultry slaughter and processing. Bl. Br. 15. In doing so, the PRDA claims that the PPIA does not regulate matters that do not implicate the slaughter or processing of poultry products. Bl. Br. 15, 19. But neither the PPIA nor the FSIS regulations support such a narrow reading. The PPIA does regulate matters other than those related to the slaughter or processing of poultry, such as imposing labeling requirements and for shipping containers, see 21 U.S.C. § 457, as well as for the storage and handling of poultry products by "any person engaged in the business of buying, selling, freezing, storing, or transporting, in or for commerce, or importing [poultry products]," id. § 463. Moreover, as already detailed, FSIS has promulgated extensive regulations as to the inspection of poultry of products, not limited or related to the slaughtering or processing of the products, such as for the entry of poultry products into an official establishment and for reinspection at the time poultry products leave an official establishment, to ascertain that the products are not adulterated or misbranded, see 9 C.F.R. §§ 318.2, 381.145. Indeed, it is well-established that, as pertinent here, the PPIA "regulates the **distribution and sale** of poultry and poultry products." Nat'l

Broiler Council, 44 F.3d at 743 (emphasis added); see also 21 U.S.C. § 452 (stating

the purpose of the PPIA is to regulate **the distribution** of poultry and poultry

products).

Similarly, the PRDA avers that Congress did not intend that "anything that

could indirectly affect the operation of an official establishment be preempted." Bl.

Br. 21. However, this ignores the broad nature of the preemption clause based on its

plain language. The Supreme Court has "repeatedly recognized" that phrases such

as "relate to"—in this case, "with respect to"—in a preemption cause express[es] "a

broad pre-emptive purpose." Morales v. Trans World Airlines, Inc., 504 U.S. 374,

383 (1992). "Congress characteristically employs the phrase to reach any subject

that has 'a connection with, or reference to,' the topics the statute enumerates."

Coventry Health Care of Missouri, Inc. v. Nevils, 581 U.S. 87, 96 (2017) (quoting

Morales, 504 U.S. at 384). Certainly, the Article XII(B) requirement that NWS wait

for a PRDA inspection to be present at the time of opening a freight container (and

therefore delaying or paralyzing the opening and unloading of poultry products) has

a connection to NWS's operations.

The PRDA refers to National Meat Association v. Harris, 565 U.S. 452

(2012), to argue that, in contrast with the state requirements seeking to be imposed

in that case regarding the treatment of nonambulatory pigs that did not exist under

the federal law and its regulations, see id. at 460-64, Article XII(B) does not regulate

the inner workings of NWS. Bl. Br. 22-24. But the PRDA's reliance is misplaced and the Court's holding in that case supports NWS's position. In <u>National Meat Association</u>, the Court found that the state requirement "reache[d] into the slaughterhouse's facilities and affect[ed] its daily activities," because it compelled them to deal with certain pigs on its premises in ways that the federal Act, the FMIA (with a preemption clause like the PPIA), and regulations did not. 565 U.S. at 460, 467. Likewise, here, Article XII(B) compels NWS to deal with inspection on its premises in a way that the PPIA and FSIS regulations do not. Such requirement regulates how NWS must deal with the poultry products received on its premises, necessarily reaching into NWS's facilities and affecting its daily activities, especially depending on the time a PRDA inspector arrives, if at all, during which time the PRDA purports to have NWS's opening and unloading of products and, thus, the rest of the distribution chain and line of business incapacitated. Moreover, while the PRDA argues that a regulation that affects the operations of an official establishment is too broad a reading of the preemption clause, the PRDA recognizes that in its analysis, the Court in <u>National Meat Association</u> looked precisely into "the manner in which the law **affected** the operations of the federally-regulated operations." Bl. Br. 23 (emphasis added).

The PRDA also refers this Court to <u>Chicago-Midwest Meat Association v. Evanston</u>, 598 F.3d 278 (7th Cir. 1978), as illustrative to the meaning of "premises,

facilities and operations" because, according to the PRDA, like Article XII(B), the ordinance at issue in that case did not regulate the premises, facilities and operations. Bl. Br. 24-25. This case, however, is easily distinguishable and also favors NWS"s preemption argument. In Chicago-Midwest Meat Association, the challenged ordinances authorized inspection of meat delivery vehicles, such as by stopping the vehicles while on their delivery routes. 598 F.3d at 280-81. The court found that the preemption clause language at issue in that case, like the one in the PPIA, prohibited state regulation in addition to, or different, from the federal scheme only on the site of the regulated establishment. Id. 283. Because the court found the vehicle inspections occurred beyond the premises of the association's members, it concluded that the ordinances did not conflict with federal law. Id. 283-84. Unlike the vehicle inspections occurring on the delivery routes already away for the premises, the inspection requirement at issue here takes place at the NWS Facilities, which is undisputedly an official establishment.

The PRDA has provided no basis for overturning the district court's decision that Article XII(B) is expressly preempted by the PPIA. Accordingly, this Court should affirm the district court's ruling.

### C.     The PRDA cannot exercise concurrent state jurisdiction.

The PRDA cannot escape preemption under the concurrent jurisdiction clause. This section of the preemption clause provides that

> [A]ny State or Territory . . . **may, consistent with the requirements under this chapter exercise concurrent jurisdiction** with the Secretary over articles required to be inspected under this chapter **for the purpose of preventing the distribution** for human food purposes **of any such articles which are adulterated or misbranded** and **are outside of such an establishment**, or, in the case of imported articles **which are not at such an establishment**, after their entry into the United States.

21 U.S.C. 467e (emphasis added). The concurrent jurisdiction clause provides three bases under which Article XII(B) is preempted (and not saved from the express preemption of the "with respect to premises, facilities and operations of any official establishment" provision). First, by its own terms, and as the district court correctly found, Add. 20-21, this clause limits the States' "concurrent jurisdiction" to **outside an "official establishment**." In other words, the concurrent jurisdiction clause does not apply to a State or Territory's enforcement actions **inside** an "official establishment," even if such enforcement were consistent with federal requirements directed at preventing the distribution of adulterated or misbranded poultry. As established, NWS is an "official establishment." App. 140. Moreover, Article XII(B) requires the presence of a PRDA inspector when the freight container is first opened and unloaded, which in the case of NWS, **happens in the NWS Facilities**.

To attempt to avoid preemption, the PRDA argues, **for the first time on appeal**, that the freight containers with the poultry and other products subject to PRDA inspection are not inside or on the NWS Facilities. Compare Bl. Br. 27-29 with App. 417-38. As a threshold matter, the Court should reject this argument

- 23 -

outright as untimely made. See Eldridge, 863 F.3d at 84; Kelly, 964 F.3d at 114,
116. Regardless, the PRDA's assertion is not only wrong but also contrary and
inconsistent with what the parties' stipulated below. The stipulations make it clear
that the freight containers are inside the NWS Facilities. See App. 140 ¶ 6 ("On
December 7, 2021, the PRDA Deputy Secretary, through its inspectors, issued
several Orders of Detention impounding over 7,000 pounds of **fresh poultry
products at the NWS facilities** which had been imported from within the U.S. by
NWS."); App. 141 ¶ 7 ("The grounds for the Orders of Detention were that a PRDA
inspector was not **physically present** when the **shipping container containing the
products was opened and unloaded at the NWS facilities**, asserting a violation of
Article XII(B) of Regulation 8."); App. 141 ¶ 9 (The Deputy Secretary refused to
rescind the Notices of Violation and continues to assert the right not to allow NWS
to **open and unload shipping containers containing poultry products imported
from within the U.S at the NWS facilities** without the presence of a PRDA
inspector.); App. 141 ¶ 12 ("On June 30, 2021, Agronomist Jaime Traverso **visited
the NWS facilities** located in San Juan, Puerto Rico. **At the moment of the visit,
the containers subject to inspection had been opened and its contents
unloaded**."). Moreover, the Orders of Detention and Notification of Violations and
Order to Show Cause themselves demonstrate, as written by a PRDA inspector, that
the freight containers are in and are opened and unloaded in the NWS Facilities, which

is an official establishment. <u>See</u> App. 258-69, 296-414, 478, 498-518. For example, a June 30, 2021 Order of Detention documented that the freight container, with the specific amount and type of poultry product, had been deposited at the NWS Facilities. App. 258. Likewise, a Notification of Violations and Order to Show Cause issued by the PRDA on October 12, 2022, notes that an inspected "visited the facilities of [NWS]" and that "[a]t the time of the visit, the container upon being inspected had already been previously opened and unloaded at the facilities." App. 514.[6]

In support of its assertion, the PRDA again points to <u>Chicago-Midwest Meat Association v. Evanston</u>, 598 F.3d 278 (7th Cir. 1978), as purportedly illustrative. Bl. Br. 28-29. However, as already discussed, the challenged regulation there dealt with the inspection of vehicles while on the road, not on the premises of the regulated establishment, and no dispute existed around that. <u>Id.</u> at 280-84. Nor does the case provide any analysis as to what is considered to be part of an official establishment or limit what that could be. This case, thus, does nothing for the PRDA.

Under the PRDA's loose logic, it is hard to see what freight container would be subject to PPIA preemption, defeating the purpose of the statute and Congress' intent in preempting any state requirement inconsistent with federal law regarding

---

[6] The PRDA also admitted that freight containers are offloaded directly to the NWS Facilities after arrival at the docks at the Port of San Juan. App. 4-5, 145.

articles to be inspected when they are in an official establishment, as they are in this case. The record demonstrates that, like the district court correctly concluded, the poultry products held in the freight containers are in the NWS Facilities, Add. 20-21, and the implementation of the Article XII(B) requirement dealing with the inspection of the poultry products occurs at and in the NWS Facilities, an official establishment. Therefore, the PRDA lacks concurrent jurisdiction to impose on NWS the Article XII(B) requirement.

Second, and even assuming *arguendo* that the freight containers containing the poultry products to be inspected were outside the NWS Facilities, as the PRDA erroneously argues, the concurrent jurisdiction clause only authorizes States to undertake efforts concurrently with the USDA to enforce requirements **consistent with federal** requirements directed at preventing the distribution of adulterated or misbranded poultry; **"[i]t does not grant states the authority to enact their own additional requirements."** Nat'l Broiler Council, 44 F.3d at 74 (emphasis added). As already discussed, it is undisputed that neither the PPIA nor FSIS regulations require the presence of an inspector at the time when a freight container is opened and unloaded, nor does USDA or FSIS require it of NWS, App. 141, while the PRDA through Article XII(B) does. Thus, the PRDA's requirement is clearly **not consistent** with the relevant FSIS requirements made under the PPIA concerning inspection procedures at official establishments. See Bates v. Dow Agrosciences

LLC, 544 U.S. 431, 447 (2005) (noting that for purposes of preemption, a requirement that is not equivalent or parallel to the federal requirement is in addition to or different from the federal requirement). Accordingly, the PRDA cannot exercise concurrent jurisdiction with respect to Article XII(A).

Third, any State's efforts to exercise concurrent jurisdiction with the USDA over articles required to be inspected must be "for the purpose of preventing the distribution" of "adulterated or misbranded" products. 21 U.S.C. 467e. Contrary to the PRDA's contention, Bl. Br. 30, Article XII(B) does not seek or further such purpose. All poultry products that NWS imports from within the United States have already been inspected and have passed inspection by the USDA on the mainland prior to shipping to Puerto Rico. App. 140. Moreover, none of the Detention Orders or Notifications of Violations indicate that NWS's products subject to the detentions or fines were "misbranded" or "adulterated" as those terms are defined by the PPIA and FSIS regulations. App. 258-69, 296-414, 478, 498-518. Indeed, the PRDA's excuse as stated in the district court for requiring that the containers with poultry products remain closed until an inspector arrives is that "[a]ny number of things could occur in the thousand-mile trek between official establishments that could make the product unsafe for human consumption" such as "failure of the cooling system." App. 426. But the PRDA does not credibly explain how an inspector could assess for such conditions only if the container is opened when he or she is present,

rather than from visual inspection of the actual product or its sampling, all of which can only take place after opening and unloading the container. Surely, if a product became unsafe during the "thousand-mile trek" it will remain unsafe after the container is opened and unloaded, even without an inspector present.

Also indicative of Article XII(B)'s disconnection with the purpose of preventing the distribution of adulterated or misbranded products is the fact that the PRDA ignored such requirement since its promulgation in June 2016 until June 2021. App. 141. Additionally, the PRDA issued Administrative Order 2022-14, which suspended the inspection of imported products due to the lack of sufficient inspectors, opting instead for conducting random, limited inspections. App. 483-86. Furthermore, the lack of relation to such enforcement for adulteration and misbranding is evident from the fact that the PRDA enforces Article XII(B) disparately, as it has negotiated "arrangements" with other Puerto Rico importers of poultry products with respect to implementation of said requirement. App. 14, 151. The regulations' arbitrariness is also emphasized by the fact that PRDA's implementation of Article XII(B) is limited to fresh poultry products, not processed or frozen poultry products, which could equally be misbranded or adulterated during transport, App. 555, and at the same time it holds hostage other products not subject to inspection either by FSIS or the PRDA, App. 140. Finally, sanctions are automatic

if the freight container is opened without the inspector being physically present, regardless of whether the poultry products are misbranded or adulterated.

Accordingly, the PPIA preemption clause strips the PRDA of any concurrent jurisdiction to impose Article XII(B), and it cannot use the concurrent jurisdiction clause to save itself of express preemption. It follows that the district court's ruling was correct and must be upheld.

## CONCLUSION

For the reasons stated herein, the district court correctly concluded that the PPIA preempts Article XII(B) of PRDA Regulation 8 and, therefore, that permanent injunctive relief as to NWS was warranted. This Court should affirm the district court's judgment.

*[signature page follows]*

Respectfully submitted,

**PIETRANTONI MÉNDEZ**
**& ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

s/ Néstor Méndez Gómez
Néstor Méndez Gómez
USCA No. 19557
nmendez@pmalaw.com

s/ María D. Bertólez Elvira
María D. Bertólez Elvira
USCA No. 87568
mbertolez@pmalaw.com

s/ María Elena Martínez Casado
María Elena Martínez Casado
USCA No. 1189857
mmartinez@pmalaw.com

*Attorneys for Plaintiff-Appellee*

December 19, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,935 words (no more than 13,000 words). The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

s/ María Elena Martínez Casado
María Elena Martínez Casado
USCA No. 1189857
mmartinez@pmalaw.com
**PIETRANTONI MÉNDEZ
& ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

December 19, 2023

## CERTIFICATE OF SERVICE

It is hereby certified that on this 19th day of December, 2023, the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

s/ María Elena Martínez Casado
María Elena Martínez Casado
USCA No. 1189857
mmartinez@pmalaw.com
**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel: (787) 274-1212
Fax: (787) 274-1470

December 19, 2023